**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

ANN TENG,

           Plaintiff,

        v.

ASTRAZENECA PHARMACEUTICALS LP,

           Defendant.

Civil Action No.: 1:23-cv-06755

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff Ann Teng, by and through her attorneys, Grubin Law Group, P.C., hereby alleges as follows against Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca" or the "Company").

**NATURE OF THE CLAIMS**

1.      Plaintiff was hired by Defendant in June 2020 and, over the course of her tenure, was one of the Company's top-performing sales employees, as evidenced by, *inter alia*, her ranking in the top 15% to 20% nationwide for her percent-to-goal sales achievements as of November 2021—the same month in which Defendant fired her based on her pregnancy and maternity leave.

2.      Plaintiff began her maternity leave in September 2021 in preparation for the birth of her first child, with her leave set to run through the end of January 2022.

3.      Notably, Plaintiff had also shared with Defendant her intent to seek additional leave into March 2022.

4.      Less than two months after she began her leave, however, Defendant informed Plaintiff that the Company was firing her, effective in early January 2022 (*i.e.*, with weeks of

approved leave remaining), thus cutting one of the most exciting periods of Plaintiff's life short by forcing her to frantically search for a new job.

5.      While Defendant claims that Plaintiff was laid off due to the U.S. Food and Drug Administration's refusal to approve Roxadustat, a new drug it was selling—circumstances brought on in large part by Defendant's intentional manipulation of data presented to regulatory authorities and the public at large—this rationale is transparently pretextual.

6.      Indeed, as part of its reduction-in-force, Defendant selected Plaintiff for termination over an objectively lower-performing colleague with no current or foreseeable childcare responsibilities who, tellingly, Defendant has since separated from employment with the Company.

7.      One of Defendant's Regional Directors admitted to Plaintiff he was indeed surprised she had been selected for termination.

8.      In fact, he thought it was mistake as he told her: "I'm very surprised you're on the list. . . . Being on maternity leave, I'm surprised you've been let go."

9.      To redress these wrongs, Ms. Teng brings claims for violations of: (i) Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); (ii) the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"); (iii) the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"); and (iv) the New York Labor Law, N.Y. Lab. Law § 215.

## JURISDICTION AND VENUE

10.      Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under Title VII and the FMLA.

11. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's related claims arising under State law.

12. Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## ADMINISTRATIVE PREREQUISITES

13. On or around January 8, 2022, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, discrimination in violation of Title VII.

14. On or around June 28, 2023, Plaintiff received a Notice of Right to Sue from the EEOC.

15. Fewer than 90 days have passed since Plaintiff received her Notice of Right to Sue.

16. Any and all other prerequisites to the filing of this action have been met.

## PARTIES

A. **Plaintiff Ann Teng**

17. Plaintiff is a resident of the State of New York and was employed by Defendant from in or around June 2020 through on or around January 4, 2022.

18. Plaintiff was a full-time employee of Defendant and, at all relevant times, worked at least 1,250 hours in any 12-month period, including the 12-month period preceding her termination.

19. At all relevant times, Plaintiff was an "employee" within the meaning of all relevant statutes and all applicable regulations thereunder.

**B.      Defendant AstraZeneca Pharmaceuticals LP**

20.      Defendant is a foreign corporation with its principal place of business located at 1800 Concord Pike, Wilmington, Delaware 19803.

21.      Defendant employs 50 or more individuals within a 75-mile radius of the location at which Plaintiff worked.

22.      At all relevant times, Defendant established, implemented, disseminated, and controlled all employment policies applicable to Plaintiff.

23.      At all relevant times, Defendant controlled and directed the terms and conditions of Plaintiff's employment.

24.      At all relevant times, Defendant maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

25.      At all relevant times, Defendant was an "employer" within the meaning of all relevant statutes and all applicable regulations thereunder.

**FACTS**

**A.      Background**

26.      Defendant hired Plaintiff in or around June 2020 as a Renal Hospital Specialist in Suffolk County, New York.

27.      Plaintiff immediately excelled in her role, consistently outperforming many of her peers, as reflected by her high-ranking sales metrics, as well as her receipt of multiple awards and quarterly incentive bonuses.

28.      In fact, as recently as November 2021—*i.e.*, the same month in which Defendant fired Plaintiff—Plaintiff's team was lauded for their exceptional work throughout the year thus far.

29.     Per year-to-date performance metrics circulated by Defendant, Plaintiff ranked in the top 15% to 20% nationwide for her percent-to-goal sales achievements as of on or around November 12, 2021.

30.     Even setting aside her performance metrics, Plaintiff's work to further Defendant's business went above and beyond the call of duty, all the way up until she began her maternity leave.

31.     Indeed, in the run-up to her maternity leave, Plaintiff gave her sales region a huge boost by successfully placing one of her pharmaceutical products into three new institutions.

32.      Plaintiff also spearheaded education efforts to maximize usage of the product in hospitals where it was already placed, including holding at least a dozen after-hours sessions with clinicians in her sales territory.

33.     Because the drug was approved by the hospitals at which Plaintiff had placed her pharmaceutical product, it was fully stocked for use and thus could "fly off the shelf" and be replenished as needed, thus ensuring that Defendant would continue to generate revenue off of the work Plaintiff had performed, even while she was out on leave.

34.     Plaintiff undertook these efforts because she understood the practical realities of her taking maternity leave, and wanted to minimize any adverse impact to her sales region that might otherwise have been caused by her absence.

35.     In recognition of her work, just two weeks before Plaintiff began her leave, she earned a Silver Sales Incentive Award.

**B.    Plaintiff's Pregnancy and Maternity Leave**

36.     In or around February 2021, Plaintiff disclosed to Defendant that she was pregnant with her first child and requested maternity leave.

37.     In preparation for the birth of her child, Plaintiff began her maternity leave on or around September 8, 2021, which was scheduled to run through on or around January 31, 2022.

38.     Specifically, Plaintiff took FMLA-qualifying leave from on or around September 8, 2021 through on or around November 30, 2021.

39.     Additionally, Plaintiff was approved for leave under the New York Paid Family Leave Benefits Law ("NYPFLBL") from on or around November 5, 2021 through  on or around January 31, 2022.

40.     Additionally, Plaintiff had discussed with Defendant her plan to take additional leave under the NYPFLBL through in or around March 2022.

41.     Plaintiff gave birth on or around September 24, 2021.

**C.     Discriminatory and Retaliatory Termination of Plaintiff's Employment**

42.     On or around November 5, 2021, Defendant terminated Plaintiff's employment without warning or plausible explanation, purportedly as part of a reduction-in-force ("RIF").

43.     Plaintiff's termination was effective on or around January 4, 2022.

44.     Defendant fired Plaintiff while she was approximately seven weeks into her maternity leave.

45.     Defendant's firing of Plaintiff cut her long-anticipated maternity leave short and forced her to commence a frantic search for new employment just seven or so weeks into her leave, rather than spending time with her newborn as intended.

46.     Notably, during Plaintiff's termination meeting, Regional Director Sean Foreman ("Foreman") told her he was so shocked to learn that she had been let go that he contacted Human Resources to confirm Defendant had not chosen to terminate her by mistake.

6

47.    In a moment of candor during the meeting, Foreman explained to Plaintiff: "I'm very surprised you're on the list. . . . Being on maternity leave, I'm surprised you've been let go."

48.    The circumstances of Plaintiff's termination make clear that she was let go not because of her performance, but based on her pregnancy, FMLA-qualifying maternity leave, and status as a new mother.

**D.    Defendant's Deliberate Misrepresentations to the FDA Regarding Roxadustat and Blatantly Unlawful Process for Deciding to Fire Plaintiff**

49.    Following Plaintiff's firing, Defendant has taken the position that it terminated Plaintiff's employment as part of downsizing set into motion by a decision from the U.S. Food and Drug Administration ("FDA") to deny approval of a new drug, Roxadustat, which is designed to treat chronic kidney disease.

50.    While Defendant announced to its staff that FDA approval of Roxadustat was all but certain, it has since come to light that the FDA denied approval because Defendant, in concert with FibroGen, Inc. ("FibroGen"), had manipulated data to mislead the FDA regarding the drug's safety and effectiveness.

51.    Indeed, FibroGen has admitted to the manipulation of data about Roxadustat to make it appear safer and more effective than it actually is.

52.    Specifically, Defendant and FibroGen changed parameters used to analyze heart safety data for Roxadustat in patients with anemia from chronic kidney disease, using these false criteria to yield more flattering results.

53.    Despite this intentional manipulation, Defendant and FibroGen disclosed this inaccurate data not just to the FDA, but also to the public in late 2019.

54.    Regardless, the FDA's refusal to approve Roxadustat in no way justifies Defendant's decision to fire Plaintiff.

55. On the contrary, Defendant's selection of Plaintiff for termination over her comparably- or lower-performing peers reveals the Company's termination decision to be discriminatory and retaliatory.

56. As a preliminary matter, Plaintiff's comparably high-performing peers in Defendant's Brooklyn and Queens sales regions were not on leave, and thus were retained.

57. Moreover, Plaintiff's responsibilities were not eliminated, but instead given to another of Defendant's sales staff, Employee A.[1]

58. In contrast to Plaintiff, Employee A is more than 50 years old, with little if any childcare responsibilities now or in the foreseeable future.

59. Further, Employee A consistently underperformed in the role she has now assumed, and she is poised to take over accounts from Plaintiff that she had failed to grow in previous years.

60. It was common knowledge that Employee A performed terribly in hospital sales and was thus forced to make a lateral move to long-term care in 2021.

61. To the extent Employee A's sales metrics justified retaining her over Plaintiff at all, those metrics were obviously inflated due to the fact that Employee A was staffed in a newly created division with zero sales—as Defendant was well aware.

62. Defendant seemingly relied upon Employee A's sales growth in her region to paper over its blatantly discriminatory and retaliatory decision to select Plaintiff for termination over Employee A, deliberately and disingenuously overlooking the fact that Employee A's sales growth, unlike Plaintiff's, was measured from a starting point of zero.

63. In short, as an overall weak performer whose most basic sales metrics pale in comparison to Plaintiff's year-over-year sales performance, Defendant's decision to fire Plaintiff

---

[1] In an effort to preserve her privacy, Employee A's name has been replaced with a pseudonym.

8

while retaining Employee A can be explained only by the fact that Plaintiff disclosed her pregnancy and requested FMLA-qualifying maternity leave.

64. Put differently, Plaintiff's pregnancy and protected leave of absence, together with the fact that Employee A no longer has childcare responsibilities, were the driving factors behind the decision to terminate Plaintiff's employment.

65. Tellingly, Defendant has since separated Employee A based on her poor performance.

66. The termination of Plaintiff's employment based on her pregnancy and FMLA-qualifying leave is on some level unsurprising, as Defendant's Field Sales Incentive Plan ("FSIP") states that employees on unpaid leaves of absence are *per se* ineligible for bonuses.

67. Specifically, the FSIP notes, "Unpaid Leave: Not eligible as defined by the FSIP Plan."

68. This policy is facially unlawful under the FMLA and, more importantly here, documents Defendant's animus toward employees who take FMLA-qualifying leaves of absence.

69. In sum, had Plaintiff not taken maternity leave, her career trajectory would have continued to accelerate, rather than suddenly staggering to a halt.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF TITLE VII: SEX DISCRIMINATION

70. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

71. During the full statutory period, Plaintiff was protected by the provisions of Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

72. During the full statutory period, Defendant was subject to the provisions of Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

73. By the actions described above, among others, Defendant discriminated against Plaintiff based on her sex and pregnancy in violation of Title VII by, *inter alia*, terminating her employment.

74. Defendant's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Title VII.

75. As a direct and proximate result of Defendant unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, and recovery of her reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FMLA: RETALIATION

76. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

77. During the full statutory period, Plaintiff was protected by the provisions of the FMLA, 29 U.S.C. §§ 2601, *et seq.*, and all applicable regulations thereunder.

78. Specifically, Plaintiff was a full-time employee of Defendant and, at all relevant times, worked at least 1,250 hours in any 12-month period, including the 12-month period preceding her termination.

79. During the full statutory period, Defendant was subject to the provisions of the FMLA, 29 U.S.C. §§ 2601, *et seq.*, and all applicable regulations thereunder.

80. Specifically, Defendant employs 50 or more individuals within a 75-mile radius of the location at which Plaintiff worked.

10

81.    As set forth above, after disclosing her pregnancy, Plaintiff notified Defendant of her intention to take FMLA-qualifying maternity leave following the birth of her child.

82.    By the actions described above, among others, Defendant unlawfully retaliated against Plaintiff for exercising her rights under the FMLA by, *inter alia*, terminating her employment.

83.    Defendant's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the FMLA.

84.    As a result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff is entitled to recover damages to the greatest extent permitted under the law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, liquidated damages, punitive damages, and recovery of her reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: SEX DISCRIMINATION

85.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

86.    During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

87.    During the full statutory period, Defendant was subject to the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

88.    By the actions described above, among others, Defendant discriminated against Plaintiff based on her sex (which includes her pregnancy) by, *inter alia*, terminating her employment.

11

89.     Defendant's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

90.     As a direct and proximate result of Defendant unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, and recovery of her reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: FAMILIAL STATUS DISCRIMINATION

91.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

92.     During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

93.     During the full statutory period, Defendant was subject to the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

94.     By the actions described above, among others, Defendant discriminated against Plaintiff based on her familial status by, *inter alia*, terminating her employment.

95.     Defendant's unlawful and discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

96.     As a direct and proximate result of Defendant unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages,

prejudgment interest, compensatory damages for emotional distress, punitive damages, and recovery of her reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF NYLL § 215: RETALIATION**

97.     Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

98.     During the full statutory period, Plaintiff was protected by the provisions of NYLL § 215 and all applicable rules and regulations thereunder.

99.     During the full statutory period, Defendant was subject to the provisions of NYLL § 215 and all applicable rules and regulations thereunder.

100.    NYLL § 215 prohibits employers, including Defendant, from discharging, threatening, penalizing, or in another manner discriminating or retaliating against any employee, including Plaintiff, *inter alia*, "because such employee has used any legally protected absence pursuant to federal, local, or state law."

101.    As set forth above, Plaintiff took a leave of absence from work in anticipation of and following the birth of her child.

102.    Plaintiff's leave of absence was protected under federal and New York State law.

103.    Specifically, Plaintiff's leave of absence was protected, *inter alia*, the FMLA, the NYPFLBL and the sick leave requirements outlined in NYLL § 196-b.

104.    Defendant retaliated against Plaintiff for her protected activities in violation of the NYLL by, *inter alia*, terminating her employment.

105.    As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of NYLL § 215, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without

limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, and recovery of her reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      Declare that the practices complained of herein are unlawful under applicable federal and State law;

B.      Grant an injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C.      Grant Plaintiff an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate her for her economic damages;

D.      Grant Plaintiff an award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate her for all non-monetary and/or compensatory damages she has suffered, including, without limitation, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

E.      Grant Plaintiff an award of damages in an amount to be determined at trial, plus prejudgment interest, for any and all other monetary and/or non-monetary losses she has suffered;

F.      Grant Plaintiff an award of punitive damages in an amount to be determined at trial;

G.      Grant Plaintiff an award of liquidated damages in an amount to be determined at trial;

H.      Grant Plaintiff an award of reasonable attorneys' fees to the greatest extent permitted by law;

I.      Grant Plaintiff an award of reasonable costs that she has incurred in this action to the greatest extent permitted by law;

J.        Grant Plaintiff an award of prejudgment interest;

K.        Grant Plaintiff all other available damages to the greatest extent permitted by law;

and

L.        Grant such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated: September 11, 2023          **GRUBIN LAW GROUP, P.C.**
New York, New York


By: */s/ Scott G. Grubin*
     Scott G. Grubin
     Alex J. Hartzband
     Rita Lenane-Massey

1330 Avenue of the Americas, Suite 23A
New York, New York 10019
Telephone: (212) 653-0631
sgrubin@grubinlaw.com
ahartzband@grubinlaw.com
rlmassey@grubinlaw.com

15